**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES HEMPHILL,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HOCHBERG, M.D. AND CORRECTIONAL MEDICAL SERVICES, INC.,<br><br>Defendants. | Civil Action No. 07-2162 (JAG)<br><br>**OPINION** |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the unopposed motion to dismiss the Amended Complaint by defendants John Hochberg, M.D. ("Hochberg"), and Correctional Medical Services, Inc. ("CMS," and, collectively with Hochberg, the "Moving Defendants"), pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, this motion shall be granted, in part, and denied, in part.

## I. FACTS

Pro se plaintiff James Hemphill ("Plaintiff") was a prisoner at the Adult Diagnostic & Treatment Center ("ADTC") in Avenel, New Jersey. (Am. Compl. 3.) Plaintiff alleges that he was exposed to elevated levels of secondhand smoke at ADTC. (Id. at 15-16, 20.) Plaintiff also

alleges that he was exposed to contagious diseases while incarcerated at ADTC. (Id. at 18-20.)[1]

**A. Exposure to Secondhand Smoke**

On a number of dates, Plaintiff "met with the institutional doctor, Dr. Hochberg, M.D.," regarding various health problems he experienced, including a "shortness of breath, chest pains, abdominal pain and sore eyes[,]" as well as "pain due to ulcers which have [sic] become much worse over the past 10 months." (Id. at 15.) "After an examination back in May, 2006, Dr. Hochberg was under the impression that [Plaintiff] was a smoker, . . ." even though he in fact was not. (Id.) Plaintiff "complained on various occasions to the doctor about the excessively high levels of cigarette smoking on the wing that [he] ha[d] to endure." (Id.) Plaintiff was diagnosed with "an infection in [his] intestines, possibly from dirt." (Id.) Plaintiff has had to resort to medication for his headaches "because of the exposure of secondhand cigarette smoke and lack of ventilation within the housing unit where [he is] housed on 8 left." (Id.)

On September 5, 2006, while meeting with Dr. Hochberg to discuss his ailments, Plaintiff "spoke again about the unreasonably dangerous levels of environmental tobacco smoke from the inmates in the toilet areas . . . [which] goes on almost 24 hours a day, seven days a week." (Id. at 16.) When Plaintiff "asked about [his] condition not getting any better, only worse because of the second hand [sic] smoke, the doctor told [Plaintiff] the second[hand] cigarette smoke was a significant factor with regards to [his] health problems being prolonged." (Id.) Dr. Hochberg "proceeded to tell [Plaintiff] that there were about 12 inmates who were suffering serious respiratory problems related to cigarette smoke and that they were literally dieing [sic] because of

[1] The Amended Complaint also includes a claim surrounding alleged tampering with Plaintiff's mail; however, this claim does not pertain to Moving Defendants.

the smoke." (Id.) "He also acknowledged the problem with the cigarette smoking within the building, and said he had spoken with the Head of Medical within the NJ Department of Corrections and that they did not show very much concern, except that they could raise the price of cigarettes or even consider cigarettes contraband, which did not seem very likely to happen." (Id.) Dr. Hochberg "said he was going to speak with Mr. Goodwin[,] one of the Administrators here at Adult Diagnostic and Treatment Center[,] with regards to this serious ongoing problem of smoking cigarettes inside this Institution . . . ." (Id.)

**B. Exposure To Contagious Diseases**

The Amended Complaint states that "[t]here are at least a hundred inmates' [sic] guards and civilian visitors who have caught scabies," and that, as a result, "now there is a serious chance that [he] may catch this scabies . . . ."[2] (Id.) Plaintiff is also "forced to be housed with inmates who have serious illnesses such as HIV . . . ." (Id. at 19.) Furthermore, the "Administration has continually allowed infected inmates with open, bleeding sores to work within the Institutional Laundry washing bed linens which are distributed throughout the Institution possibly contaminating clean linens with infection or blood stains." (Id. at 20.) "Inmates with this unknown rash/infection also continue to work in food service areas (wing kitchen/main kitchen)." (Id.)

**C. The Amended Complaint**

Plaintiff claims that Moving Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as "1997(e)e, New Jersey's Clean Air Act N.J.S.A. 26.3D

---

[2] Scabies is "a contagious disease caused by *Sarcoptes scabiei*, the human itch mite, characterized by intense itching of the skin and excoriation from scratching." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 1537 (6th ed. 2002).

55-63 [sic] 28 U.S.C. § 1915(g) . . . N.J.A.C. 10A:16-2.21 and N.J.A.C. 10A:22-2.7." (Id. at 2.) The following summarizes Plaintiff's allegations against each Moving Defendant:

1. *Dr. Hochberg*

Dr. Hochberg, who Plaintiff attests has "an ethical responsibility to provide the best medical treatment he can regardless of the cost," has "failed to diagnose the [outbreak] problem," despite having "seen well over 100 inmates and . . . receiv[ed] numerous calls from both civilians and institutional guards as to what is this outbreak . . . ." (Id. at 11.) "Although on numerous occasions [Dr. Hochberg] has informed all that have inquired that this disease is not contagious, . . . inmates and guards and civilian visitors who have come in contact with inmates . . . have contracted this disease." (Id.) "Dr. Hochberg has a duty to report this outbreak to another state agency and if they are unable to help him then he should have reported this to a federal agency that has the resources to find out what it is that is spreading uncontrollable [sic] at A.D.T.C." (Id.)

Furthermore, "Dr. Hochberg has refused to tell any patient that he has treated, what disease or infection . . . he is treating them for." (Id.) "Dr. Hochberg has been treating inmates with scabies medication but has refused to acknowledge that scabies is what anyone has." (Id.) "Dr. Hochberg . . . has taken biopsies, but has not informed any inmate of the results[;] he has continued to fail to inform the plaintiffs of the risk of exposure, failed to prevent said exposure, and failed to put medical procedures or policies in place to eliminate or minimize the risk of exposure." (Id. at 12.)

2. *CMS*

Plaintiff has submitted medical request forms stating his medical concerns and symptoms,

and has "then [been] placed on a list to come and see the doctor." (Id.) "If the inmate is fortunate enough to see the doctor . . . . [m]ost of the problems are over looked [sic] and usually only one is addressed at a time even through [sic] you have mentioned several." (Id.) "The majority of the time inmates' problems are not addressed causing prolonged pain discomfort and stress, because of the inadequate medical treatment." (Id.)

"The employer Correctional Medical Services, Inc. is responsible for the action of there [sic] employees which are following company policies and procedures." (Id.) "CMS and its employees are ethically responsible for failing to tell patients about potentially life threatening conditions which is a fundamental breach of standard medical practice." (Id. at 13.) "CMS has shown there is a lack of screening, no management of chronic or infectious disease, badly kept records, [and] patients are given creams without seeing [d]octors . . . ." (Id.)

"Plaintiff has also submitted medical records request forms on four different occasion[s] . . . . [but] to date Plaintiff still has not received his complete medical records." (Id.) "Plaintiff must have his complete medical history . . . . before he is returned back to his home country of the United Kingdom." (Id.)

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1959. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See W. Penn Power Co., 147 F.3d at 259; 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357. Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(b).

The court's review of the sufficiency of a pro se complaint, "however inartfully pleaded," is less stringent than its review of pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A court must assume a pro se plaintiff's factual allegations are true and construe his claim liberally. See Nietzke v. Williams, 490 U.S. 319, 330 n.9 (1999); Roman v. Jeffes, 904 F.2d 192, 197 (3d Cir. 1990).

## III. ANALYSIS

After liberally construing the Amended Complaint, this Court finds that Plaintiff has raised a Section 1983 claim for violation of his First, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff also alleges violations of the New Jersey Smoke Free Act (the "NJSFA"), as well as N.J.A.C. §§ 10A:16-2.21 and 10A:22-2.7 by Moving Defendants.[3] Moving Defendants' arguments supporting dismissal of the aforementioned claims shall be analyzed seriatim.

### A. Plaintiff Presented A Viable Eighth Amendment Claim For Inadequate Medical Treatment Against Dr. Hochberg Regarding His Exposure to Contagious Diseases

Moving Defendants argue that Plaintiff failed to allege an Eighth Amendment violation

[3] Plaintiff alleges a cause of action under the "New Jersey Clean Air Act N.J.S.A. 26.3D 55-63 [sic]." (Am. Compl. 2.) However, New Jersey has no statute entitled the New Jersey Clean Air Act. Since the citation provided in the Amended Complaint is that of the New Jersey Smoke Free Act (the "NJSFA"), this Court shall construe the Amended Complaint to allege a violation of the New Jersey Smoke Free Act.

because Plaintiff has not asserted that Moving Defendants were deliberately indifferent to his medical needs.

"The Eighth Amendment prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). In Estelle v. Gamble, the Supreme Court held that a failure to provide adequate medical treatment to prisoners may constitute a violation of the Eighth Amendment. 429 U.S. 97, 104 (1976). To state a cognizable Eighth Amendment claim under Estelle, a prisoner must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle test, the objective component, the prisoner must show that his medical needs are serious. Estelle, 429 U.S. at 104. A medical need is serious if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

To satisfy the second prong, the subjective component, an inmate must show that the state actors acted with deliberate indifference to his serious medical need. Estelle, 429 U.S. at 105. "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). A prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," and may not rest on allegations of negligence or malpractice. Estelle, 429 U.S. at 106. The Third Circuit has found "'deliberate

indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F. 3d 192 (3d Cir. 1999).

Eighth Amendment liability is not limited to indifference to current serious medical problems; the risk of serious future harm to an inmate's health may also constitute a claim under the Amendment. Helling, 509 U.S. at 34 (rejecting the argument that "only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment."). Under Helling, to sustain a claim for unreasonable risk of future serious harm, plaintiff must still fulfill the objective and subjective elements necessary to prove an Eighth Amendment violation, with a slight variation on the objective component. Id. at 34-36.

Specifically, to satisfy the Eighth Amendment's objective prong, a plaintiff "must show that he himself is being exposed" to an unreasonable risk of serious harm. Id. at 35. In particular, a court must conduct a "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure" to a contagious illness. Id. at 36. A court must also "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone *unwillingly* to such a risk." Id. (emphasis in original).

With respect to Plaintiff's complaints surrounding the spread of contagious diseases, the Amended Complaint alleges facts sufficient to fulfill the objective prong of the test set forth in Estelle. Plaintiff alleges that "there is a serious chance that [he] may catch this scabies or 'Itchy Scratchy' which it is commonly referred to here at A.D.T.C." (Am. Compl. 18.) Plaintiff goes

on to state that "[t]here are at least a hundred" inmates, guards, and civilian visitors who have contracted scabies as a result of the alleged outbreak. (Id.) "Day after day inmates continue to be treated with pills and creams, but still this rash/infection continues to spread." (Id. at 19.) Such allegations of the widespread presence of an infectious skin disease surely suggest that Plaintiff was exposed to an unreasonable risk of serious harm.

The allegations raised against Dr. Hochberg satisfy the subjective prong of the test. The Amended Complaint states that Dr. Hochberg failed to inform inmates of the nature of their ailment. Dr. Hochberg also communicated to the inmates that their medical condition was not contagious, thereby enabling the spread of scabies within the penal institution. This Court finds that Plaintiff has raised a cognizable Section 1983 claim against Dr. Hochberg for violation of the Eighth Amendment related to the alleged spread of scabies within A.D.T.C. See Helling, 509 U.S. at 34 (citing Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974)); Joy v. Healthcare C.M.S., 534 F. Supp. 2d 482, 485 (D. Del. 2008) (stating Supreme Court's acknowledgment that "inmates may be entitled to relief under the Eighth Amendment where they proved threats to personal safety from the mingling of inmates with serious contagious diseases").

The analysis of Plaintiff's inadequate medical care claim differs with respect to CMS. Moving Defendants articulate two reasons why CMS cannot be held liable for an Eighth Amendment violation under Section 1983. First, Moving Defendants argue that CMS does not constitute a "person" within the meaning of Section 1983. Second, Moving Defendants contend, CMS cannot be held liable in its supervisory capacity for the actions of its employees.

CMS is a private company that provides medical services to inmates, pursuant to a contract with the State of New Jersey. See Riggs v. Corr. Med. Serv., No. 03-2246, 2005 WL

2009920, at *8 (D.N.J. Aug. 18, 2005). A "private company that provides health services to [] inmates" may be held liable under §1983. Natale v. Camden County Corr. Facility, 318 F.3d 575, 578 (3d Cir. 2003).

Section 1983 liability, however, may not be imposed vicariously or under a theory of respondeat superior. Id. at 583. Rather, to sustain a §1983 claim against CMS, a plaintiff must show that "there was a relevant [CMS] policy or custom" that caused the alleged constitutional deprivation. Id. at 583-84. "To hold a supervisor liable under § 1983 for failure to properly supervise, 'the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.'" Boyd v. Bergen County Jail, No. 07-769, 2007 WL 1695736, at *2 (D.N.J. June 7, 2007) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001)). "The supervisory liability test can be met by (i) showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's, or (ii) showing that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of supervisory officials to respond will alone support finding that the four-part test is met." Id. (internal citations and quotations omitted).

Although CMS constitutes a "person," within the meaning of Section 1983, Plaintiff has not alleged sufficient facts to show that CMS, in its supervisory capacity, violated the Eighth Amendment with respect to the alleged scabies outbreak. Plaintiff states that CMS employees failed to notify patients of "potentially life threatening conditions," prescribed medication without first examining the patient, and maintained poorly organized medical records, among

other things. Plaintiff goes on to state that "Correctional Medical Services, Inc. is responsible for the action of there [sic] employees which are following company policies and procedures." (Am. Compl. 12.) However, Plaintiff has not pointed to any specific policy that sanctions the CMS employees' actions outlined in the Amended Complaint. Nor has Plaintiff shown that CMS was aware of, and thus indifferent to, the risks created by its employees' alleged actions. The absence of such facts inhibits this Court from recognizing a Section 1983 claim against CMS, as a supervisor, for violation of the Eighth Amendment.

Furthermore, Plaintiff has not alleged facts sufficient to maintain a claim against Moving Defendants with respect to his alleged exposure to secondhand smoke. The Amended Complaint states that Dr. Hochberg diagnosed him with an intestinal infection, explained that the secondhand smoke may have exacerbated his symptoms, and spoke with "the Head of Medical within the NJ Department of Corrections" about the issue. (Id. at 15.) Regardless of whether Plaintiff's intestinal infection constitutes a serious medical need, Plaintiff has not iterated any facts showing that Moving Defendants acted in a manner evidencing deliberate indifference to this serious medical need. Indeed, the Amended Complaint illustrates Dr. Hochberg's attentiveness to Plaintiff's ailments. Plaintiff cannot allege a violation of his Eighth Amendment rights based on Moving Defendants' attention to his secondhand smoke exposure.

**B. Plaintiff Has Not Alleged Facts Sufficient to Support a Violation of the Fourteenth Amendment**

Moving Defendants assert that Plaintiff's Section 1983 claims relying on the Fourteenth Amendment must fail because he has not alleged facts showing that his liberty interest was infringed, or that he is a member of a protected class.

The Fourteenth Amendment of the Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. Due process rights are divided into two areas: substantive due process, and procedural due process.

Substantive due process stipulates that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are arbitrary, irrational, or tainted by improper motive, or by means of government conduct so egregious that it shocks the conscience[.]" Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (internal citations and quotations omitted). "To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Id. at 139-40.

Procedural due process, on the other hand, requires notice and a hearing to be given to any person that is deprived of a life, liberty, or property interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

The Fourteenth Amendment also ensures that a person is not denied "equal protection of the laws." U.S. CONST. amend. XIV. The equal protection clause "does not require the state to treat all persons alike." Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983). "To establish a violation of the equal protection clause, a plaintiff must show that the allegedly offensive categorization invidiously discriminates against the disfavored group." Id.

Moving Defendants correctly point out that Plaintiff failed to allege membership in a class or category of individuals experiencing discrimination at the hands of Moving Defendants. Prisoners, generally speaking, do not inherently constitute a suspect classification, and state

regulations of prisoners are deemed "presumptively constitutional." Myrie v. Comm'r, N.J. Dept. of Corr., 267 F.3d 251, 263 (3d Cir. 2001).[4] The Amended Complaint focuses solely on the constitutional violations allegedly experienced by Plaintiff, and does not allege, expressly or impliedly, that the grievances occurred or endured due to Plaintiff's membership with a particular class of persons.

In addition, Moving Defendants – unlike their co-defendants in the instant action – identified Plaintiff's failure to present facts supporting the infringement of a liberty interest. (Def. Br. 8 (citing Edwards v. Samuels, 2007 WL 81884, at *11 (D.N.J. Jan. 8, 2007) (holding that a requirement that prison areas be smoke-free does not create a liberty interest).) Consequently, Plaintiff is unable to allege a substantive or procedural due process violation under the Fourteenth Amendment. This, together with Plaintiff's failure to raise an equal protection violation, requires this Court to dismiss Plaintiff's Section 1983 claim for violation of the Fourteenth Amendment.

### C. Plaintiff's Section 1983 Claim For Violation of the Fifth Amendment Warrants Dismissal

Plaintiff cannot, as a matter of law, sustain a Section 1983 claim against Moving Defendants alleging violation of his Fifth Amendment rights. The Fifth Amendment restricts only federal government action. Nguyen v. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). Since the Amended Complaint does not allege claims against any federal actors, Plaintiff's Section 1983 claim for violation of the Fifth Amendment must be dismissed.

---

[4] This Court acknowledges that a plaintiff may identify a "particular inmate sub-group" sufficient to challenge a prison policy on equal protection grounds. Id. at 263-64. However, even with a liberal construal of the Amended Complaint, this Court has not been able to identify any such allegations raised by Plaintiff.

**D. Plaintiff Has Not Articulated A Violation of the First Amendment**

Plaintiff's allegations against Moving Defendants, which center on his exposure to secondhand smoke and contagious diseases, do not support a violation of his First Amendment rights. A Section 1983 claim for inadequate medical care arises under either the *Eighth* Amendment, or the *Fourteenth* Amendment, depending on whether the state has secured a formal adjudication of guilt against the plaintiff prior to his injury. Natale 318 F.3d at 580 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).

Although retaliation against Plaintiff for expressing his complaints about the medical care may amount to a First Amendment violation, see Glenn v. Barua, 252 F. App'x 493, 499 (3d Cir. 2007), Plaintiff has not alleged such action by Moving Defendants. Absent any facts showing retaliation, Plaintiff's Section 1983 claim against Moving Defendants based on the First Amendment must be dismissed.

**E. New Jersey Smoke Free Act**

Finally, Moving Defendants assert that Plaintiff's claim under the NJSFA must be dismissed because it does not provide for a private right of action.

The NJSFA prohibits smoking in indoor public places and workplaces, with limited exceptions. See N.J. STAT. ANN. § 26:3D-58. However, the NJSFA provides no private right of action to plaintiffs aggrieved by a violation of its terms. N.J. STAT. ANN. § 26:3D-62(e) ("[T]here shall be no private right of action against a party for failure to comply with the provisions of this act."). As a matter of law, Plaintiff cannot articulate a viable claim against Moving Defendants under the NJSFA.

## IV. CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss shall be granted, in part, and denied, in part. All Section 1983 claims raised against Moving Defendants for violation of the First, Fifth, and Fourteenth Amendments shall be dismissed. Furthermore, the Section 1983 claim raised against CMS for violation of the Eighth Amendment, and the Section 1983 claim against Dr. Hochberg for violation of the Eighth Amendment with respect to Plaintiff's alleged exposure to secondhand smoke, shall be dismissed. Lastly, the state-law claim for violation of the New Jersey Smoke Free Act shall be dismissed against Moving Defendants. Plaintiff's remaining claims shall survive.

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: June 26, 2008