<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                        :
JAMES HEMPHILL,                         :
                                        :
            Plaintiff,                  :
                                        :          Civil Action No. 07-2162 (JAG)
            v.                          :
                                        :               **OPINION**
GRACE ROGERS, et al.,                   :
                                        :
            Defendant.                  :
_____:


<u>**GREENAWAY, JR., U.S.D.J.**</u>

     This matter comes before this Court on the unopposed motion to dismiss by defendants Grace Rogers ("Rogers"), George Hayman ("Hayman"), Bernard Goodwin ("Goodwin"), Sgt. Brown ("Brown"), Joe D'Amico ("D'Amico"), and Zulima Farber ("Farber," and, collectively with Rogers, Hayman, Goodwin, Brown, and D'Amico, the "Moving Defendants"), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and, alternatively, for summary judgment, pursuant to FED. R. CIV. P. 56.  For the reasons set forth below, Moving Defendants' motion to dismiss will be granted, in part, and denied, in part.  This Court shall not consider Moving Defendants' motion as one seeking summary judgment.

## I.  BACKGROUND

     <u>Pro se</u> plaintiff James Hemphill ("Plaintiff") was a prisoner at the Adult Diagnostic & Treatment Center ("ADTC") in Avenel, New Jersey.  (Am. Compl. 3.)  Plaintiff alleges that he was exposed to elevated levels of secondhand smoke at ADTC.  (<u>Id.</u> at 15-16, 20.)  Plaintiff also

claims that his mail was tampered with and opened outside of his presence.  (Id. at 20.)  Last, Plaintiff alleges that he was exposed to contagious diseases while incarcerated at ADTC.  (Id. at 18-20.)

## A.    <u>Exposure to Secondhand Smoke</u>

On a number of dates, Plaintiff "met with the institutional doctor, Dr. Hochberg, M.D.," regarding various health problems he experienced, including a "shortness of breath, chest pains, abdominal pain and sore eyes[,]" as well as "pain due to ulcers which have [sic] become much worse over the past 10 months."  (Id. at 15.)  "After an examination back in May, 2006, Dr. Hochberg was under the impression that [Plaintiff] was a smoker, . . ." even though he in fact was not.  (Id.)  Plaintiff "complained on various occasions to the doctor about the excessively high levels of cigarette smoking on the wing that [he] ha[d] to endure."  (Id.)  Plaintiff was diagnosed with "an infection in [his] intestines, possibly from dirt."  (Id.)  Plaintiff has had to resort to medication for his headaches "because of the exposure of secondhand cigarette smoke and lack of ventilation within the housing unit where [he is] housed on 8 left."  (Id.)

On September 5, 2006, while meeting with Dr. Hochberg to discuss his ailments, Plaintiff "spoke again about the unreasonably dangerous levels of environmental tobacco smoke from the inmates in the toilet areas . . . [which] goes on almost 24 hours a day, seven days a week."  (Id. at 16.)  When Plaintiff "asked about [his] condition not getting any better, only worse because of the second hand [sic] smoke, the doctor told [Plaintiff] the second[hand] cigarette smoke was a significant factor with regards to [his] health problems being prolonged."  (Id.)  Dr. Hochberg "proceeded to tell [Plaintiff] that there were about 12 inmates who were suffering serious respiratory problems related to cigarette smoke and that they were literally dieing [sic] because of

2

the smoke." (Id.)  "He also acknowledged the problem with the cigarette smoking within the building, and said he had spoken with the Head of Medical within the NJ Department of Corrections and that they did not show very much concern, except that they could raise the price of cigarettes or even consider cigarettes contraband, which did not seem very likely to happen." (Id.)  Dr. Hochberg "said he was going to speak with Mr. Goodwin[,] one of the Administrators here at Adult Diagnostic and Treatment Center[,] with regards to this serious ongoing problem of smoking cigarettes inside this Institution . . . ." (Id.)

"On or about December [of] 2006, an inmate from Plaintiff[']s wing was given a disciplinary charge for smoking in the Dorm (B) bathroom . . . ." (Id.)  The inmate "was brought before the custody board [but the claim] was dismissed . . . ." (Id.)  "[T]his action only encouraged this inmate (J.S.) to continue smoking in the Dorm Bathroom." (Id.)

"On April 20, 2007 the commissary stopped selling matches, but inmates were allowed to stockpile matches before this date, now causing inmates to conserve on matches [which] now creat[es] groups of as many as 5 to 8 inmates smoking in the bathrooms at the same time, causing the smoke to now enter [Plaintiff's] sleeping area, stronger and more frequently." (Id.)

**B.    Mail Tampering**

"On or about July, 2005, [Plaintiff] had first noticed that [he] was having trouble receiving incoming mail from [his] family, and letters that were being sent from overseas." (Id. at 16-17.)  Plaintiff "wrote [to] the mail room officer, Sgt. Brown . . . ." (Id. at 17.)  "On August 17, 2005, it was sent back and [Plaintiff] was told their [sic] was not any such problem with [his] mail." (Id.)

"On or about July, 2006 [Plaintiff] had noticed again that some important court papers

3

that [he] had sent out to the court to be filed, along with 'Outgoing Legal Mail' receipts had not returned after five business days." (Id.) After calling the court and finding out that the papers were not received, Plaintiff submitted an "inmate remedy form" and "filed [sic] out a grievance form on or about July 20, 2006, to inquire as to where is the mail that I sent out to the courts." (Id.) Plaintiff also "filed a complaint with Mr. Yaros the Director of Education . . . on July 27, 2006" and "also wrote to Grace Rogers the head Administrator for the institution on July 28, 2006." (Id.)

"On August 2, 2006, [Plaintiff] had received a letter of reply from Mr. Yaros that said that my mail went out the following Monday, July 17, 2006, and enclosed a copy of one (1) of the 'Outgoing Legal Mail' receipts showing the date of July 17, 2006, out of five (5)." (Id.) However, "[o]n August 4, 2006, [Plaintiff] received a reply from Grace Rogers that said that [his] mail was found unprocessed in the mail room weeks later and had never left the building along with other mail." (Id.) This information "contradict[ed] what Mr. Yaros had said and the receipt that he [had] shown [Plaintiff] . . . ." (Id.)

On August 9, 2006, Plaintiff wrote a letter complaining about the mail tampering to "the Commissioner of the Department of Corrections, George Hayman and Zulima Farber, Attorney General of New Jersey," but never received a response. (Id. at 18.) Plaintiff also called "Ms. Libak regarding the problem with [his] 'Legal Mail' . . ." but no response was received. (Id.)

On August 23, 2006, Plaintiff submitted a second grievance form. (Id.) Plaintiff "was told the Institution is allowed to open [mail] outside [his] presence, even though the Court has stated different[ly]." (Id.) Plaintiff received the same response to his July 24, 2006 "Inmate Remedy Form." (Id.)

On "August 28, 2006, [Plaintiff] received a reply to the two grievance forms [he] had submitted," but the response did not acknowledge that Plaintiff has "never received the receipts for [his] 'Outgoing Mail.'"  (Id.)  "On November 30, 2006 [Plaintiff] had to submit another Inmate Remedy Form with regards to not receiving [his] 'Outgoing Legal Mail' receipts . . . ." (Id.)  Although Plaintiff never received the receipts, he "was told they were sent to [his] wing . . . ."  (Id.)

C.      **Exposure To Contagious Diseases**

The Amended Complaint states that "[t]here are at least a hundred inmates' [sic] guards and civilian visitors who have caught scabies," and that, as a result, "now there is a serious chance that [he] may catch this scabies . . . ."[1]  (Id.)  Plaintiff is also "forced to be housed with inmates who have serious illnesses such as HIV . . . ."  (Id. at 19.)  Furthermore, the "Administration has continually allowed infected inmates with open, bleeding sores to work within the Institutional Laundry washing bed linens which are distributed throughout the Institution possibly contaminating clean linens with infection or blood stains."  (Id. at 20.)  "Inmates with this unknown rash/infection also continue to work in food service areas (wing kitchen/main kitchen)."  (Id.)

Furthermore, "Grace Rogers also refuses to acknowledge the outbreak in this building and thus is continuing to put [his] health and life at risk."  (Id. at 19.)  Plaintiff had "submitted an Inmate Remedy Form to Grace Rogers on September 22, 2006 . . . ."  (Id.)  However, Plaintiff "was sent a response stating that there was no rash/infection of any type within this Institution[,]

---

[1]      Scabies is "a contagious disease caused by *Sarcoptes scabiei*, the human itch mite, characterized by intense itching of the skin and excoriation from scratching."  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 1537 (6th ed. 2002).

and [that] if [he] was worried [he] should see medical." (Id.)

"Due to the situation regarding the rash/infection getting worse and being housed with an inmate covered with bleeding sores over his whole body . . . [Plaintiff] was compelled to write again regarding [his] concerns and fears." (Id.)  On March 27, 2007, Plaintiff wrote "to Ms. Libak[,] Ombudsman for Corrections . . . ." (Id. at 19-20.)  Ms. Libak met with Plaintiff in April of 2007, and asked that he "keep her informed regarding this matter." (Id. at 20.)  Plaintiff "also received a response from Division of Operations, D.O.C. on March 30, 2007, stating it would be referred to Mr. Goodwin for review and appropriate action." (Id.)  However, Plaintiff received no further information. (Id.)

Plaintiff also wrote to the "Medical Unit, Department of Corrections, [and] received a response on April 26, 2007 . . . ." (Id.)  The response stated that "they would inform [Plaintiff] after their investigation was complete." (Id.)  However, Plaintiff received no further information. (Id.)

## D.    **The Amended Complaint**

Plaintiff claims that Moving Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as "1997(e)e, New Jersey's Clean Air Act N.J.S.A. 26.3D 55-63 [sic] 28 U.S.C. § 1915(g) . . . N.J.A.C. 10A:16-2.21 and N.J.A.C. 10A:22-2.7." (Id. at 2.) The following summarizes Plaintiff's allegations against each Moving Defendant:

### 1.    *Grace Rogers*

Rogers "failed to inform Plaintiff of the risk of exposure, failed to prevent said exposure, and failed to put procedural or policies in place to eliminate or minimize the risk of exposure." (Id. at 3-4.)  Rogers' failures occurred "after Plaintiff had submitted 'Inmate Remedy Forms' as

6

well as a 'Request for a Smoke Free Environment.'"  (Id. at 3.)

      2.     *George Hayman*

Plaintiff wrote to Hayman, "the head of all the New Jersey State Prison institutions, with regards to the tobacco smoke environment[,] and he stated it would be referred back to the Institution to be addressed . . . ."  (Id. at 5.)  However, Plaintiff avers that this has never been done.  (Id.)

Plaintiff also wrote to Hayman regarding the opening of his legal mail.  (Id.)  "Again[,] the complaint were [sic] passed to Division of Operations asking if Plaintiff had exhausted all his options."  (Id.)  "To date[,] nothing has ever been done and Plaintiff[']s legal mail continues to be opened outside Plaintiff[']s presence . . . ."  (Id.)

With respect to the alleged exposure to contagious diseases, Plaintiff alleges that, "[w]ith the number of outbreaks it is surely impossible for [Hayman] not to know about the seriousness of the situation here at ADTC because it is his responsibility to now [sic] what is going on . . . ."  (Id.)  "Hayman oversees the running of all NJ Prisons and can supersede and correct this situation, but has chosen not to do so."  (Id.)

      3.     *Bernard Goodwin*

Goodwin, "the Assistant Administrator who is also responsible for policies and decisions made regarding state inmates, and their Health and Safety," knew of the skin infection "outbreak" because he "personally answered numerous remedy forms stating there is no rash here."  (Id. at 6.)  By "not providing Plaintiff with a living environment free of inmates with contagious diseases or adopting a policy to address the concerns of this infectious disease, which still continues to spread, [Plaintiff's] physical health is at risk."  (Id. at 7.)  "Plaintiff was notified

by [the] Division of Operations that Mr. Goodwin would review the situation and take appropriate action regarding this situation [but] to date nothing has been done . . . ."  (<u>Id.</u>)

      4.    <u>*Sgt. Brown*</u>

Plaintiff filed inmate grievance forms with Brown regarding tampering with his legal mail.  (<u>Id.</u>)  Brown replied that "he was authorized to open [Plaintiff's] legal mail in this manner . . . ."  (<u>Id.</u>)

      5.    <u>*Joe D'Amico*</u>

D'Amico "is responsible for the processing of orders of tobacco products which are exacerbating [Plaintiff's] current illness of Acid Reflux Disease through extremely high levels of second hand [sic] smoke and may lead to further illnesses associated with the second hand [sic] smoke."  (<u>Id.</u> at 8.)

## II.  <u>STANDARD OF REVIEW</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1959 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  <u>Twombly</u>, 127 S. Ct. at 1959.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  <u>Id.</u>

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See W. Penn Power Co., 147 F.3d at 259; 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357.  Any further expansion beyond the pleading, however, may require conversion of the motion into one

for summary judgment.  FED. R. CIV. P. 12(b).

The court's review of the sufficiency of a pro se complaint, "however inartfully pleaded," is less stringent than its review of pleadings prepared by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A court must assume a pro se plaintiff's factual allegations are true and construe his claim liberally.  See Nietzke v. Williams, 490 U.S. 319, 330 n.9 (1999); Roman v. Jeffes, 904 F.2d 192, 197 (3d Cir. 1990).

### III.  ANALYSIS

After liberally construing the Amended Complaint, this Court finds that Plaintiff has articulated a Section 1983 claim for violation of his First, Fifth, Eighth, and Fourteenth Amendment rights.  Plaintiff also alleges violations of the New Jersey Smoke Free Act (the "NJSFA"), as well as N.J.A.C. §§ 10A:16-2.21 and 10A:22-2.7 by Moving Defendants.[2] Moving Defendants' arguments supporting dismissal of the aforementioned claims shall be analyzed seriatim.[3]

---

[2] Plaintiff alleges a cause of action under the "New Jersey Clean Air Act N.J.S.A. 26.3D 55-63 [sic]."  (Am. Compl. 2.)  However, New Jersey has no statute entitled the New Jersey Clean Air Act.  Since the citation provided in the Amended Complaint is that of the New Jersey Smoke Free Act, this Court shall construe the Amended Complaint to allege a violation of the New Jersey Smoke Free Act.

[3] As discovery has not yet been conducted, Moving Defendants' motion for summary judgment is premature.  See Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007). The Third Circuit has stated that

> [i]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.' This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.  In this vein, the Supreme Court has explained that '[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under *Rule 56(f)*.'"

Id. (emphasis in original) (internal citations omitted).  Based on the Circuit's rationale, this Court

**A.    Plaintiff's § 1983 Claims Against Moving Defendants in Their Official Capacities Are Barred by the Eleventh Amendment**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  This Amendment bars suits against any state, or its agencies, in federal court by that state's own citizens or citizens of other states.  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); see also Kelley v. Edison Twp., No. 03-4817, 2006 U.S. Dist. LEXIS 23510, at *18 (D.N.J. Apr. 25, 2006) (citing Bennett v. City of Atl. City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003) (stating that "[t]he breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, the state is the real, substantial party in interest.").

The Supreme Court has held that a Section 1983 claim seeking damages against a state official in his official capacity must be dismissed because the real party at interest is the state and the state is not a "person" within the meaning of Section 1983.  Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under 1983.").  Claims against state officers, acting in their official capacity, are treated as suits against the state itself.  See Kentucky v. Graham, 473 U.S. 159, 166 (1986); Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."); Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only

---

will not address Moving Defendants' arguments for summary judgment, except where those arguments alternatively support a valid argument for dismissal under Rule 12(b)(6).

another way of pleading an action against an entity of which an officer is an agent."). State agencies and officials acting in their official capacities are routinely afforded Eleventh Amendment immunity. Buckhannon Bd. & Care Home, Inc., v. W. Va. Dept. of Health & Human Res., 532 U.S. 598, 609 (2001); Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989).

According to N.J. STAT. ANN. § 30:1B-2, the New Jersey Department of Corrections ("NJDOC") is a principal department of the state's executive branch. Courts have consistently extended sovereign immunity to NJDOC officials in Section 1983 actions. See, e.g., Casilla v. N.J. State Prison, No. 05-4590, 2006 WL 2534416, at *7 (D.N.J. Aug. 31, 2006) (finding Section 1983 claims against defendant in official capacity barred by the Eleventh Amendment).

This Court finds that Moving Defendants are entitled to sovereign immunity. Rogers, Hayman, Goodwin, Brown, and D'Amico are all named in the Amended Complaint in their official capacities as employees of the NJDOC. Farber, the former Attorney General of New Jersey, likewise should be afforded immunity under the Eleventh Amendment against the Section 1983 claims raised against her in her official capacity. See Ryerson v. New Jersey, No. 06-1214, 2007 WL 749813, at *6 (D.N.J. Mar. 7, 2007) (Greenaway, J.) (granting Eleventh Amendment immunity to Attorney General Zulima Farber against Plaintiff's Section 1983 claims).

Moving Defendants are entitled to Eleventh Amendment immunity, and Plaintiff's Section 1983 claims against them, in their official capacities, must be dismissed, with prejudice.[4]

---

[4] Since "[t]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983," Moving Defendants shall not be granted immunity with respect to the Section 1983 claims brought against them in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991).

**B.**     **Plaintiff's Section 1983 Claims Against Moving Defendants Do Not Rely On the Respondeat Superior Theory**

Moving Defendants also argue that summary judgment should be granted in their favor for Plaintiff's Section 1983 claims because the claims rely on the theory of respondeat superior, and Moving Defendants did not have any personal involvement in the alleged wrongs.  As explained *supra* in footnote 3 of this Opinion, Moving Defendants' motion for summary judgment is premature.  This Court, therefore, shall consider only whether dismissal of Plaintiff's claim is appropriate under Moving Defendants' proffered argument.

Local government units and supervisors are not liable under Section 1983 solely on a theory of respondeat superior.  See Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Dept. of Soc. Svcs., 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellaciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence."  Id.; see also Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Moving Defendants argue that the Section 1983 claims should be dismissed because Plaintiff has not alleged any personal involvement by any of the parties.  However, the Amended Complaint alleges personal involvement, whether through direct action or acquiescence, by each of the Moving Defendants.  Specifically, Plaintiff alleges that Moving Defendants had knowledge of ongoing constitutional violations, and the power to remedy these violations.

Plaintiff's Section 1983 claims raised against Moving Defendants, in their individual capacities, shall not be dismissed.

**C.**   **Plaintiff Is Not Eligible To Receive Prospective Injunctive Relief**

Moving Defendants also argue that Plaintiff may not seek prospective injunctive relief because he is no longer incarcerated at ADTC.  This Court agrees.

The grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances."  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.1989) (quoting Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir.1988)).  Generally, in determining whether to grant a preliminary injunction, courts in this Circuit review four factors:

> (1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest.

Sypniewski v. Warren Hills Reg'l Bd. of Educ., 307 F.3d 243, 252 (3d Cir. 2002) (citing Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001)); see also Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 356-57 (3d Cir. 1980).

"[W]hile the burden rests upon the moving party to make [the first] two requisite showings, the district court" should look to factors three and four when they are relevant. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994).  "All four factors should favor preliminary relief before an injunction will issue." S&R Corp v. Jiffy Lube Int'l Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 192 (3d Cir. 1990)).

14

"Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."  Daniels v. Kelchner, No. 05-1601, 2007 WL 4199882, at *2 (M.D. Pa. Nov. 20, 2007) (citing Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 356 (3d Cir. 1980)).  In order to prove irreparable harm, the moving party "must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.' '  Acierno, 40 F.3d at 653 (quoting Instant Air Freight, 882 F.2d at 801).  "[A] failure to show a likelihood of success[,] or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction." In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982).  Accordingly, a prisoner no "longer subject to the alleged conditions he attempts to challenge" does not satisfy the irreparable harm requirement and is thus not eligible for injunctive relief.  Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981).

On October 18, 2007, Plaintiff informed this Court that he was no longer incarcerated at ADTC, and that he had been moved to an immigration detention center.  (Docket Entry No. 45.) As such, Plaintiff may no longer request injunctive relief, since he is no longer subject to the conditions about which he complains.

## D.   Plaintiff Has Alleged Sufficient Facts to Support an Eighth Amendment Claim of ETS Exposure

Moving Defendants next argue that Plaintiff's Eighth Amendment claim should be dismissed because Plaintiff cannot produce any evidence that he was exposed to unreasonably high levels of ETS, or that Moving Defendants acted with deliberate indifference to his health or safety.  This Court finds that the Amended Complaint alleges facts sufficient to support

15

Plaintiff's Eighth Amendment claim.

The Supreme Court has held that prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of ETS.  Helling v. McKinney, 509 U.S. 25, 35 (1993) ("We cannot rule at this juncture that it will be impossible for [plaintiff], on remand, to prove an Eighth Amendment violation based on exposure to ETS.").  A claim for violation of the Eighth Amendment may be based upon possible future harm to health, as well as present harm, arising from ETS exposure.  Id. at 33.

To obtain relief, a prisoner must satisfy a two-prong test.  The objective prong requires Plaintiff to show that the level of ETS to which he is exposed is unreasonably high, while the subjective prong requires Plaintiff to show that the prison officials have expressed "deliberate indifference" to the health risks associated with secondhand smoke.  Id. at 35-37.

     1.    Objective Prong

To determine whether a Plaintiff is being exposed to unreasonably high levels of ETS requires

> more than a scientific and statistical inquiry into the seriousness of the potential harm and likelihood that such injury to health will actually be caused by exposure to ETS.  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk.

Id. at 36 (emphasis in original).  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  Id.

Moving Defendants argue that Plaintiff cannot satisfy the objective prong of Helling because there is no evidence to show that he was being exposed to unreasonably high levels of

ETS.   Further, they argue that there is a No-Smoking Policy at ADTC that is regularly enforced, and that inmates are issued disciplinary charges for smoking in prohibited locations.

Plaintiff presents allegations that may support a finding that he was exposed to unreasonably high levels of ETS.  The Amended Complaint states that Plaintiff had requested "to be removed from an environment of seriously high level of secondhand tobacco smoke, which filled the bathroom area and drifted out into the living/sleeping area."  (Am. Compl. 3.)

Since consideration of Moving Defendants' summary judgment motion is not appropriate at this time, Plaintiff is not required at this stage of the litigation to present evidence that would entitle him to prevail.  Taking Plaintiff's allegations to be true, as is required at this juncture, this Court cannot conclude that Plaintiff is unable to satisfy the objective prong of the Helling test.

      2.    Subjective Prong

Plaintiff has also alleged facts sufficient to satisfy the subjective prong of Helling.  "To prove deliberate indifference under the subjective component, an inmate must show that the defendant official knows that the inmate faces a substantial risk of serious harm, and disregards that risk by failing to take reasonable measures to abate it."  Edwards v. Samuels, No. 06-3758, 2007 WL 81884, at *7 (D.N.J. Jan 8, 2007) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The deliberate indifference factor "should be determined in light of the prison authorities' current attitudes and conduct."  Helling, 509 U.S. at 36.  Although "the adoption of a smoking policy . . . will bear heavily on the inquiry into deliberate indifference," id. at 36, allegations of ignored requests for a non-smoking unit, together with knowledge of a prisoner's medical condition, may satisfy the subjective prong of the Helling test.  See Edwards, 2007 WL 81884, at *7; Patel v. Warren, No. A-07-CA-760-SS, 2007 WL 2818056, at *7 (W.D. Tex. Sept.

26, 2007).

Moving Defendants contend that Plaintiff cannot satisfy the subjective prong of <u>Helling</u> because ADTC is a smoke-free institution, the staff enforces the provisions of the policy, and all of Plaintiff's grievances were promptly addressed and resolved.  This Court disagrees.

While the implementation of a no-smoking policy can indicate a lack of deliberate indifference, the existence of a policy is not dispositive.  <u>See</u> <u>Edwards</u>, 2007 WL 81884, at *7 (holding that Plaintiff's allegations that a prison's nonsmoking policy was not enforced and his repeated requests for a non-smoking unit were ignored could support a claim of deliberate indifference such that dismissal was not appropriate); <u>Patel</u>, 2007 WL 2818056, at *7 (holding that dismissal was inappropriate where plaintiff claimed defendants ignored non-smoking policy and refused Plaintiff's requests for non-smoking housing).

Here, Plaintiff alleges that, despite a no-smoking policy, he was exposed to excessive levels of ETS.  He asserts that Moving Defendants ignored his requests for a smoke-free environment, with full awareness of his ailments.  This Court finds that Plaintiff has alleged facts sufficient to survive a motion to dismiss.

**E.**     **<u>Plaintiff Alleges a Valid Eighth Amendment Claim Against Rogers, Goodwin, and Hayman for Inadequate Medical Treatment</u>**

Moving Defendants argue that they are entitled to an entry of summary judgment in their favor because Plaintiff was provided access to medical care and continuous treatment while incarcerated at ADTC.  Since this Court shall not entertain Moving Defendants' summary judgment motion, this Court shall only analyze whether Plaintiff has expressed a viable Eighth Amendment claim for inadequate medical treatment against Moving Defendants.

18

"The Eighth Amendment prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'"  Rouse v. Plantier, 182 F. 3d 192, 198 (3d Cir. 1999) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).  "The Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . .'"  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F. 2d 571, 579 (8th Cir. 1968)).

In Estelle, the Supreme Court held that a failure to provide adequate medical treatment to prisoners may constitute a violation of the Eighth Amendment.  Id. at 104.  To state a cognizable Eighth Amendment claim under Estelle, a prisoner must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle standard, the objective component, the prisoner must show that his medical needs are serious.  Estelle, 429 U.S. at 104.  A medical need is serious if  "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

To satisfy the second prong, the subjective component, an inmate must show that the state actors acted with deliberate indifference to his serious medical need.  Estelle, 429 U.S. at 105.  "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'"  Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)).  A prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," and may not rest on allegations of

19

negligence or malpractice.  Estelle, 429 U.S. at 106.  The Third Circuit has found "'deliberate

indifference' in a variety of circumstances, including where the prison official (1) knows of a

prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary

medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving

needed or recommended medical treatment."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.

1999).

      Eighth Amendment liability is not limited to indifference to current serious medical

problems; the risk of serious future harm to an inmate's health may also create a claim under the

Eighth Amendment.  Helling, 509 U.S. at 34 (rejecting the argument that "only deliberate

indifference to current serious health problems of inmates is actionable under the Eighth

Amendment.").  Under Helling, to sustain a claim for unreasonable risk of future serious harm,

plaintiff must still satisfy the objective and subjective elements necessary to prove an Eighth

Amendment violation, with a slight variation on the objective component.  Id. at 34-36.

Specifically, to satisfy the Eighth Amendment's objective prong, a plaintiff "must show that he

himself is being exposed" to an unreasonable risk of serious harm.  Id. at 35.   In particular, a

court must conduct a "scientific and statistical inquiry into the seriousness of the potential harm

and the likelihood that such injury to health will actually be caused by exposure" to a contagious

illness.  Id. at 36.  A court must also "assess whether society considers the risk that the prisoner

complains of to be so grave that it violates contemporary standards of decency to expose anyone

*unwillingly* to such a risk."  Id.  (emphasis in original).

      Here, Plaintiff alleges that "there is a serious chance that [he] may catch this scabies or

'Itchy Scratchy' which it is commonly referred to here at A.D.T.C."  (Am. Compl. 18.)  Plaintiff

goes on to state that "[t]here are at least a hundred" inmates, guards, and civilian visitors who have contracted scabies as a result.  (Id.)  "Day after day inmates continue to be treated with pills and creams, but still this rash/infection continues to spread."  (Id. at 19.)  These allegations of the widespread presence of an infectious skin disease surely constitute exposure to an unreasonable risk of serious harm.

The subjective prong of the test has also been satisfied with respect to Rogers, Goodwin, and Hayman.  The Amended Complaint states that Plaintiff wrote letters and forwarded complaints to Rogers and Goodwin expressing that the spread of the skin infection had worsened but to no avail.  (Id. at 19-20.)  It also states that Hayman must have known of "the seriousness of the situation here at ADTC," but failed to remedy the situation.  (Id. at 5-6.)

However, the Amended Complaint does not allege that Brown, D'Amico, or Farber knew of the threat of infection faced by Plaintiff.  Indeed, the claims against D'Amico focus on the alleged exposure to secondhand smoke, while the claims against Farber and Brown center on the mail tampering allegations.  As a result, this Court does not recognize that Plaintiff has raised an Eighth Amendment claim for inadequate medical treatment against D'Amico, Farber, and Brown.

**F.**   **Plaintiff Has Alleged Facts Sufficient to Support a Fourteenth Amendment Claim, But Not a Fifth Amendment Claim**

Moving Defendants assert that Plaintiff's Section 1983 claims relying on the Fifth and the Fourteenth Amendments must fail because he has not alleged facts to support an equal protection claim.

Plaintiff cannot, as a matter of law, sustain a Section 1983 claim against Moving

Defendants alleging violation of his Fifth Amendment rights.  The Fifth Amendment restricts only federal government action.  Nguyen v. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). Since the Amended Complaint does not allege claims against any federal actors, Plaintiff's Section 1983 claim for violation of the Fifth Amendment must be dismissed.

The analysis of Plaintiff's Fourteenth Amendment claim, however, is less straightforward.  The Fourteenth Amendment of the Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. CONST. amend. XIV.  Due process rights are divided into two areas: substantive due process, and procedural due process.

Substantive due process stipulates that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are arbitrary, irrational, or tainted by improper motive, or by means of government conduct so egregious that it shocks the conscience[.]"  Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (internal citations and quotations omitted).  "To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies."  Id. at 139-40.

Procedural due process, on the other hand, requires notice and a hearing to be given to any person that is deprived of a life, liberty, or property interest.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

The Fourteenth Amendment also ensures that a person is not denied "equal protection of the laws."  U.S. CONST. amend. XIV.  The equal protection clause "does not require the state to treat all persons alike."  Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983).  "To establish a violation

of the equal protection clause, a plaintiff must show that the allegedly offensive categorization invidiously discriminates against the disfavored group." Id.

Moving Defendants correctly point out that Plaintiff failed to allege membership in a class or category of individuals experiencing discrimination at the hands of Moving Defendants. Prisoners, generally speaking, do not inherently constitute a suspect classification, and state regulations of prisoners are deemed "presumptively constitutional." Myrie v. Comm'r, N.J. Dept. of Corr., 267 F.3d 251, 263 (3d Cir. 2001).[5]  The Amended Complaint focuses solely on the constitutional violations allegedly experienced by Plaintiff, and does not allege, expressly or impliedly, that the issues occurred or endured due to Plaintiff's membership with a particular class of persons.

While Plaintiff has not alleged facts sufficient to assert an equal protection violation, Plaintiff nevertheless may have presented facts supporting violation of his Fourteenth Amendment rights.  Moving Defendants have offered no arguments explaining that Plaintiff failed to allege a violation of a fundamental right, such that he was not entitled to procedural due process.  Moving Defendants also have not asserted in their motion papers that Plaintiff failed to allege a violation of his substantive due process rights.  Since "defendant bears the burden of showing no claim has been stated," Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)), Plaintiff's Section 1983 claim for violation of the Fourteenth Amendment shall not be dismissed.

---

[5]  This Court acknowledges that a plaintiff may identify a "particular inmate sub-group" sufficient to challenge a prison policy on equal protection grounds. Id. at 263-64. Even with a liberal construal of the Amended Complaint, this Court has not been able to identify any such allegations raised by Plaintiff.

**G.**    **Dismissal of Plaintiff's Claim for Punitive Damages is Not Appropriate**

Punitive damages are available in a Section 1983 action where the "defendant's conduct is shown to have been motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see also Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987). "Punitive damages are awarded in the jury's discretion to punish [the defendant] for his outrageous conduct and to deter him and others from similar conduct in the future." Smith, 461 U.S. at 54.

Moving Defendants argue that Plaintiff has not alleged that they acted with an evil motive or callous indifference towards his rights, and that Plaintiff's various grievances were addressed by ADTC personnel. However, Plaintiff alleges that his concerns were not addressed, despite his repeated complaints and worsening ailments. Plaintiff's allegations are sufficient to survive a motion to dismiss his request for punitive damages.

## IV.  CONCLUSION

For the reasons stated above, the motion to dismiss shall be granted, in part, and denied, in part. The Section 1983 claims raised against Moving Defendants in their official capacities shall be dismissed, with prejudice. In addition, any Eighth Amendment claim against D'Amico, Farber, and Brown for inadequate medical treatment shall be dismissed. Last, Plaintiff's Section 1983 claim based on violation of the Fifth Amendment shall be dismissed. Plaintiff's remaining claims shall survive.


                            S/Joseph A. Greenaway, Jr.
                            JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: June 26, 2008